JOHN H. PHILLIPS AND OTHERS, AS COMMISSIONERS OF HIGH-WAYS OF THE TOWN OF TONAWANDA, APPELLANTS, *v.* CONRAD SCHUMACHER.

*Commissioners of highways — order directing removal of encroachment — form of, when signed by only two commissioners — chapter 482 of 1875 — not a local bill — constitutionality of — Power of board of supervisors to reduce width of highway — notice to parties interested.*

Where an order, directing the removal of an encroachment upon a public high-way, is signed by only two of the commissioners, it must clearly appear upon the face thereof that all of the commissioners were notified to attend a meeting to deliberate thereon.

The order should contain the words, "all the commissioners," or their equivalent; words that may or may not mean "all" are not enough.

*Quære*, as to what is a sufficient notice of the purpose of the meeting.

Chapter 482 of 1875, entitled "An act to confer on boards of supervisors further powers of local legislation and administration, and to regulate the compensation of supervisors," is not a local bill within the meaning of the constitutional provision (art. 3, sec. 16), providing that no private or local bill shall embrace more than one subject, and that shall be expressed in the title; and even if it were so, it embraces but one subject, which is distinctly expressed in its title.

Subdivision 10 of section 1 of said act, conferring upon boards of supervisors authority "to authorize the laying out of highways of a less width than is now required by law, and reducing the width of highways now in existence," confers no power upon such boards to adopt a resolution or ordinance which shall have the effect, *proprio vigore*, of establishing such a road or reducing the width of one already in existence, but merely authorizes them to provide, by suitable legislation, for the doing of those acts by commissioners of highways, or such other suitable agencies as the boards may, in their discretion, appoint.

Under said act the boards have no power to authorize proceedings in such cases without an application from, or notice to parties interested therein, and without giving such parties an opportunity to be heard.

The proper way to exercise the power conferred by the act would be to pass an act authorizing the commissioners of highways of the town, or the other officers or persons designated by the board, to entertain proceedings to reduce the width of the road in question on application and notice as specified in the act.

APPEAL from order of the Erie County Court refusing a new trial.

The action was brought to recover the statute penalty for an alleged encroachment, by defendant's fences, on what is known as

the Two Mile Creek road, in Tonawanda. The County Court directed a verdict for the defendant. The principal controversy was, whether the road was three rods or four rods wide, on the defendant's premises, it being conceded that if it was only three rods wide the defendant had not encroached on it. The road was surveyed in 1820, but that survey was not recorded, and no order was then made laying out the road, but the work of clearing through the woods for a road was commenced that year, and a road was opened, worked and used, more or less, until 1851, but it did not follow the line of the survey at all points, nor was it of the width of four rods. On the 4th of April, 1851, the commissioners made a new survey, and fixed the width of the road at four rods, by an order which they caused to be recorded. The new survey was intended to follow the old one as far as practicable, but as the blazed trees, the only monuments of the old survey, were not then standing, the location of the old line could not be definitely ascertained. In surveying the road four rods wide its lines were frequently extended beyond the fences that adjoined the road as theretofore used, and they ran through several buildings, orchards, gardens and door yards. There is no evidence that the consent of the owners was given, that a jury was called, or that there was an appraisal or payment of damages. It appeared, however, that the defendant subsequently to the making of the order of 1851, and in that year, moved his fences out, by direction of the commissioners, and made the road wider; and in 1866, by their direction, he moved his fences still further out, and they so remained until 1873, when he moved them in, making the road less than four rods, but leaving it at least three rods wide on his land.

On the 10th of August, 1874, two of the commissioners made an order which recited that the road in question had been laid out of the width of four rods, but had never been sufficiently described and recorded, and ordered that it be according to a survey therein incorporated, and that it be four rods wide. On the same day they made another order, declaring the defendant's fences an encroachment, and directing their removal. The latter order was in these words: "We, the commissioners of highways of the town of Tonawanda, in the county of Erie, having ascertained that the outer line of a public highway in said town is described as follows, to wit"

(describing it by courses and distances, and also describing the alleged encroachment): "It is, therefore, ordered by the commissioners of highways of said town that the said fences be removed, so that the said highway be open and unobstructed, and of the breadth which was originally intended, which was four rods."

"Done at a meeting of the commissioners of highways of the said town of Tonawanda on the 10th day of August, 1874, said commissioners having been notified to attend said meeting for the purpose of deliberating on the subject of this order." (Signed) "J. H. Phillips, Philip Pirson, commissioners." The town had three commissioners at the time.

It appeared in evidence, that after the commencement of the suit, and shortly before the trial, the board of supervisors of Erie county passed an act reducing the width of the road to three rods, its whole length.

*S. Lockwood,* for the appellants.

*Lewis & Gurney,* for the respondent.

SMITH, J.:

It is not material to inquire whether there was a valid survey and record of the highway in question as a four-rod road, prior to 1851. Nor is it material to determine whether the order made in April of that year, was a nullity, so far as it attempted to lay the road on a new line, and to increase its width by taking in buildings and grounds which could not be acquired without the consent of the owners. That the defendant gave his consent thereto is to be implied from the fact, that he complied with the order of the commissioners, without objection, and removed his fences to the lines designated by them. And as his fences remained where he so placed them for more than six years uninterruptedly, and the soil between them was worked and used as a public highway, during the whole time, the jury would have been warranted in finding a highway across his premises by dedication and acceptance. The evidence also warranted the conclusion that the defendant, when he moved his fences in 1873, encroached upon the limits of the highway as theretofore used.

But it was essential to the plaintiffs' cause of action that they should show a valid order of the commissioners, specifying the alleged encroachment, and directing the defendant to remove it. (1 R. S., 521, § 103.) The order which was put in evidence for that purpose was made by only two of the three commissioners. To be of any validity, it must be shown upon its face, that it conformed to the following provision of the statute : " Any two commissioners of highways of any town may make an order in execution of the powers conferred in this title, provided it shall appear in the order filed by them that all the commissioners of highways of the town met and deliberated on the subject embraced in such order, or were notified to attend a meeting of the commissioners for the purpose of deliberating thereon." (1 R. S., 525, § 125.)

It does not appear from the order that all the commissioners met. Therefore, to satisfy the requirement of the proviso, the order must show that the third commissioner was notified to attend the meeting, and, also, that he was notified that the meeting was to be held for the purpose of deliberating on the subject embraced in the order. In the first of these respects, the order seems clearly defective. It does not show that the absent commissioner was notified of the meeting. All that appears is, that the two who signed the order were notified. The expressions, " We, the commissioners of highways, having ascertained," " it is therefore ordered by the commissioners," and " done at a meeting of the commissioners," obviously refer to the two commissioners alone, who " met," " ascertained " and " ordered," and who, by affixing their signatures to the order, designated themselves as the persons referred to. And when the order says, at the close, " said commissioners having been notified," it necessarily refers to the same commissioners previously mentioned therein, and no others ; in short, the statements in the order may be strictly true, and yet the absent commissioner have had no notice of the meeting.

That this defect in the order, declaring the encroachment and directing its removal, was not the result of inadvertence or ignorance of the statute is apparent from the form of the other order made at the same time, by the same two commissioners, declaring the road to be four rods in width, which closed by saying, " done at a meeting of the commissioners of said town, etc., all of said

commissioners having been notified to attend said meeting for the purpose of deliberating on the subject of this order." In *The People* v. *Hynds* (30 N. Y., 470) the order recited that notice was given "that the undersigned commissioners of highways of said town would attend," etc., and the order was signed by but two of the three commissioners of the town, and did not show that they all met; held void as made by two commissioners without the intervention of the third, or notice to him recited in the order. HOGEBOOM, J., delivering the opinion of the court, said "the statute was intended to make an absolute and universal rule for cases of this kind, and to prevent any presumptions whatever." (P. 473.) The statute says "all" the commissioners, and the order, should have used the same words, or their equivalent; words that may or may not mean "all" are not enough. It is unnecessary to cite authorities to show that this defect is fatal to the order, and to all proceedings based upon it.

It is also insisted, by the respondent's counsel, that the recital does not show that the notice of the purpose of the meeting was sufficient. It is contended that there is a material difference between the "purpose of deliberating on the subject embraced in an order" and that of "deliberating on the subject of such order;" or, in other words, that the order itself is one subject, and the matter embraced in it is another, and a very different one. Whatever force there may be in this argument, it is not necessary to pass upon it, if the opinion already expressed as to the validity of the order is correct.

Another position taken by the counsel for the respondent is, that the act of the board of supervisors reducing the width of the road in question to three rods took away the plaintiff's cause of action. It is urged, in reply, that the statute under which the board of supervisors acted (Laws 1875, chap. 482) is unconstitutional. The reason assigned is that it is a local law, and the title does not express its local nature. The Constitution provides that no private or local bill shall embrace more than one subject, and that shall be expressed in the title. (Art. 3, § 16.) The title of the act is, "An act to confer on boards of supervisors further powers of local legislation and administration, and to regulate the compensation of supervisors." The act was passed in pursuance of the constitutional

provision authorizing the legislature, by general laws, to confer additional powers of local legislation and administration on boards of supervisors (art. 3, § 23), and in consequence of the amendment to the Constitution, which took effect on the 1st of January, 1875, prohibiting the legislature from passing a private or local bill in any of the cases therein specified. (Art. 3, § 18.) The act, by its terms, extends to every county in the State, "except in cities whose boundaries are the same as those of the county." Judicial cognizance may be taken of the fact that the only city in the State whose boundaries are the same as those of the county is New York. If its boundaries should cease to be coterminous with those of the county, that city would fall within the act without further legislation. The provisions of the act are, in their nature, applicable to every county in the State, and none is excepted by name. The act, therefore, is not local within the meaning of the Constitution. Furthermore, whether local or not, it embraces but one subject and that is distinctly expressed in its title. The conferring of further powers on boards of supervisors, and the regulating of the compensation of supervisors in view of the additional time and labor which the discharge of their duties will necessarily require, is but one subject of legislation. The latter is incidental to the former. (*Harris* v. *The People*, 59 N. Y., 599; *Devlin* v. *The Mayor*, 63 id., 8; *The People* v. *Banks*, decided by the Court of Appeals in December, 1876, and not reported, 4 N. Y. W. Dig., 124.)

A more serious question is, whether the act passed by the board of supervisors of Erie, was within the scope of their authority. The act of the legislature, above referred to, confers powers of legislation in relation to divers subjects specified in the first section of the act. In respect to some of the subjects the boards are vested with the power of complete and final action; in respect to others they have no power except to *authorize* action by other local officers or municipal corporations. Their power in respect to laying out and reducing the width of highways is of the latter description. It is given by the tenth subdivision of section one, which is in these words: "To authorize the laying out of highways of a less width than is now required by law, and of reducing the width of highways now in existence." The provision gives no power to boards of supervisors to adopt a resolution or ordinance which shall have the effect, *pro-*

*prio vigore*, to establish a road or reduce the width of one previously existing. The power conferred is to *authorize* the acts specified to be done; that is, to provide by suitable· legislation for the doing of those acts by commissioners of highways, or such other suitable agencies as the boards, in their discretion, may appoint. When the act of 1875 was adopted all public roads to be laid out by the commissioners of highways of any town were required to be not less than three rods wide. (1 R. S., 517, § 80.) The object of the provision in question was to empower boards of supervisors to authorize the laying out of highways of a less width than the statute then required. The board of supervisors of Erie, in undertaking, by a direct enactment, to reduce the width of the road in question, exceeded their authority.· But if the resolution of the board had been within the scope of their power it was fatally defective, I conceive, inasmuch as for aught that appears, it was passed without notice to any one. It is not to be presumed that the legislature intended to authorize proceedings in such cases without an application from or notice to parties interested, and without giving such parties an opportunity to be heard. In this case the commissioners of highways of the town, as the representatives of the public, had a direct interest in the matter. The statute which authorizes a proceeding to alter or discontinue a highway gives the right of appeal to any person aggrieved, whether the order directs or refuses the altering or discontinuing of the highway. (1 R. S., 513, §§ 55, 56; id., 518, §§ 83, 84; Amd. L., 1847, chap. 455, § 8.) In analogy to those provisions notice of some kind should be given at some stage of the proceedings to reduce the width of an established highway, or to lay out a new one less than four rods wide. A proper exercise of the power of the board would be to pass an act authorizing the commissioners of highways of the town, or other officers or persons designated, to entertain proceedings to reduce the width of the road in question, on application and notice as specified in the act. Probably the boards have power to pass a special or a general act, in their discretion, but in either case, the act should prescribe a mode of procedure which will require the giving of notice to persons directly interested, or will secure to any aggrieved party a right of review similar to the provisions of the Revised Statutes in analogous cases.

The act of 1875 provides that the powers thereby conferred shall

be exercised by boards of supervisors, at stated, special or adjourned sessions as therein prescribed (§ 2), and that every resolution adopted in pursuance of the provisions of the first section of the act, shall be prefixed by a title concisely expressing its contents, following which shall be a reference to the law or laws from which the authority to pass the resolution shall be derived, and a statement of the vote, whether by two-thirds or a majority of all, by which it was passed, and in the cases where it is required that the resolution should receive the assent of the supervisor of the town to which it applies, the fact whether or not it received such assent shall be also stated. (Id.) Whether these provisions, so far as they are applicable to the resolution in question, were complied with in its passage, does not appear. The printed case purports to give the resolution *verbatim*, but it contains no title or statement of the vote. The resolution, when offered in evidence, was objected to on several grounds, but not on the ground that it did not comply with the provisions of the act above stated. We are to assume, therefore, that it was sufficient in those respects, or if not, that the defect was waived.

But for the reasons already expressed, we are of the opinion that the resolution exceeded the powers of the board and was void. This conclusion disposes of the point made by the defendant's counsel that the resolution of the board had the effect to supersede the penalties theretofore incurred by encroachments, upon that portion of the highway lying between the three-rod and the four-rod limits.

By reason of the invalidity of the order declaring the encroachment, we think the decision of the court below was right and should be affirmed.

Order denying a new trial affirmed.

MULLIN, P. J., and TALCOTT, J., concurred.

Ordered accordingly.